O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIMAX EXPRESS, INC., and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> COSCO NORTH AMERICA, INC., COSCO CONTAINER LINES AMERICA, INC., <br><br> Defendants. | Case No. CV 11-02947 DDP (PLAx) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION** <br><br> [Docket No. 9] |

Presently before the court is a Motion to Compel Arbitration filed by Defendants Cosco North America, Inc. and Cosco Container Lines America, Inc. (collectively, "Cosco"). Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following order.

**I. Background**

Cosco transports cargo containers over sea and land. Cosco contracts with trucking companies such as Plaintiff Unimax Express, Inc. ("Unimax") for the overland portions of Cosco's shipments. Trucking companies pick up loaded containers from

marine terminals, deliver the containers to their ultimate destination, then return the empty containers back to the marine terminal. When truckers do not pick up loaded containers within the agreed upon time, equipment providers such as Cosco charge truckers "demurrage," or late pick-up, fees. Similarly, when trucking companies do not return empty containers on time, Cosco charges "per diem," or late drop-off, fees.

Cosco only contracts with carriers who are signatories to a standard contract, the Uniform Intermodal Interchange and Facilities Access Agreement ("the Agreement"). The Agreement was drafted by the Intermodal Association of North America ("the Association"), a trade organization located in Maryland.[1] Unimax has signed the Agreement.

The Agreement contains an arbitration provision ("the Provision"). The Provision sets forth default procedures for resolving disputes "with respect to per diem [i.e. late drop-off] or maintenance and repair invoices." (Agreement § H.1). Invoiced parties must provide written notification of disputed charges within thirty days of receipt of the disputed invoice. (Agreement §§ H.2-H.3.) If an invoiced party fails to timely provide written notice of a dispute, that party may not seek arbitration or assert any other defense against the invoice, and must pay the invoiced charges immediately. (Agreement § H.3.)

If arbitration is sought, the Association will appoint a three-member panel to resolve the dispute. (Agreement, Exhibit D ¶ 3.) "Disputes must be confined to charges arising from

---

[1] The Association is not a party to this action.

2

Maintenance and Repair . . . or Per Diem [late drop-off] invoices." (Agreement, Ex. D ¶ 6.)  Once an arbitration is initiated, the moving party has fifteen days to submit written arguments to the Association.  (Id. ¶ 7.)  The non-moving party then has fifteen days to submit responses.  (Id. ¶ 8.)  The arbitration panel will then render a decision based on the written submissions of the parties.  (Id. ¶ 9.)  If further information is required, the panel "may" hold a conference call with both parties.  (Id. ¶ 10.)  The panel's decisions are final, and are not subject to appeal.  (Id. ¶ 11.)

On April 7, 2011, Unimax filed the instant action against Costco, alleging that Cosco unlawfully levies late pick-up and late drop-off fees on weekends and holidays in violation of California Business and Professions Code § 22928.  Cosco now moves to compel Unimax to arbitrate its claims under the Agreement.

**II. Legal Standard**

Under the FAA, 9 U.S.C. § 1 et seq., a written agreement that controversies between the parties shall be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the court for an order directing that arbitration proceed as provided for in the agreement.  9 U.S.C. § 4; see e.g. Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1526-27 (1997) (considering a motion to compel arbitration).  In considering a motion to compel arbitration, the court must determine whether there is a duty to arbitrate the controversy, and "this

3

determination necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." Stirlen, 51 Cal. App. 4th at 1527.  The determination of the validity of an arbitration clause, which may be made only "upon such grounds as exist for the revocation of any contract," is solely a judicial function.  Id. (internal citation omitted).

If the court is satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not at issue, the court shall order the parties to proceed to arbitration in accordance with the terms of the agreement.  9 U.S.C. § 3.  The FAA reflects a "federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

**III. Discussion**

Unimax opposes Cosco's instant motion on the grounds that the Provision is unconscionable and, therefore, unenforceable. (Opposition at 12.)  As an initial matter, the court rejects Cosco's suggestion that this argument is controlled by the Supreme Court's recent decision in AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011).  Cosco suggests that Concepcion prevents courts from invalidating unconscionable arbitration agreements on the basis of state law.  (Reply at 4.)  Cosco is mistaken.  Concepcion limited state-law-based unconscionability challenges to class-action waiver provisions in arbitration agreements. Concepcion, 131 S.Ct. at 1753.  The Court recognized, however, that "agreements to arbitrate may be invalidated by generally applicable contract defenses, such as fraud, duress, or

unconscionability." Id. at 1746 (internal quotation and citation omitted). Thus, "[t]he ability of such contractual defects to invalidate arbitration agreements is not affected by the Supreme Court's decision in [Concepcion]." Community State Bank v. Strong, 651 F.3d 1241, 1267 n.28 (11th Cir. 2011); See also Ferguson v. Community College, 2011 WL 4852339 *2 (C.D. Cal. October 6, 2011).

    A.   Choice of Law

Before determining whether the Provision is valid, this court must first determine, under the choice-of-law rules of the forum state, which state's laws apply. Pokorny v. Quixtar, 601 F.3d 987, 994 (9th Cir. 2010). Here, the Agreement contains a Maryland choice of law provision. (Agreement § G.7.) In California, courts generally respect choice-of-law provisions within contracts that have been negotiated at arm's length. Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 464 (1992).[2] Choice-of-law provisions will not be enforced, however, if "the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties choice" or 2) the chosen state's law is contrary to the fundamental public policy of a state that has a materially greater interest in the issue at hand and whose law would otherwise apply. Bridge Fund Capital

---

[2] The court notes that here, as discussed further infra, the Agreement was not negotiated at arm's length. The Association drafted the standard language of the Agreement, to which Unimax had to agree in order to conduct business with Cosco. "[C]ourts should not apply choice-of-law provisions in adhesion contracts if to do so would result in substantial injustice to the adherent." Flores v. American Seafoods Co., 335 F.3d 904, 918 (9th Cir. 2003) (internal quotation marks omitted).

5

Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002-1003 (9th Cir. 2010); Nedlloyd, 3 Cal.4th at 465.

Here, Maryland has no relationship to the parties or the transactions at issue here. No party is located in Maryland, nor does it appear that any party conducts substantial business in Maryland. Unimax asserts, and Cosco does not dispute, that all of the transactions relevant here occurred in California. Unimax's claims arise under California state law alone.
This cases only tie to Maryland is the fact that the Association, which drafted the Agreement without Unimax's input, is located in Maryland. The Association, however, is not a party to this case. The court is not persuaded by Cosco's unsupported assertion that "[g]iven the importance of the [Association] and its role in this industry, there is an obvious nexus between Maryland and the choice of law provision." (Reply at 5.) Nor can the court find any reasonable basis to apply Maryland law where the only conceivable connection to Maryland is a contract of adhesion drafted by a third party. Accordingly, California law applies.

    B.   Validity of the Arbitration Provision

Unconscionability has generally been recognized to include (1) an absence of meaningful choice on the part of one of the parties and (2) contract terms which are unreasonably favorable to the other party. Stirlen, 51 Cal. App. 4th at 1531. Put another way, unconscionability has a "procedural" and "substantive" element. See Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007). "[A]n arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable." Pokorny, 601 F.3d at 996.

6

California courts apply a "sliding scale" analysis in making this determination: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Davis, 485 F.3d at 1072. (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669, 690 (Cal. App. 2000)). Both procedural and substantive unconscionability must be present for a contract to be declared unenforceable, but they need not be present to the same degree. Harper v. Ultimo, 113 Cal. App. 4th 1402, 1406 (2003).

### 1. Procedural Unconscionability

Here, Cosco recognizes that its revenues are greater than Unimax's, apparently conceding that Cosco is in a position of superior bargaining power. Cosco's contention that the Agreement is not adhesive is not persuasive. Cosco argues in a footnote that Unimax "simply chose to sign" the Agreement. (Reply at 10 n. 8.) However, Cosco does not dispute Unimax's assertion that Unimax had to sign the standardized Agreement in order to conduct business as an intermodal carrier. (Opp. at 14, Reply at 10.) It is well settled that standardized, adhesive contracts drafted by the stronger party are procedurally unconscionable. Pokorny, 601 F.3d at 996. The fact that the Association, and not Cosco, drafted the Provision's language, does not affect the strength of the parties' relative positions. Though Cosco did not itself draft the Agreement, it clearly approved of the Provision's language, and proceeded to present the Provision to Unimax on a take it or leave it basis. As such, the Provision is procedurally unconscionable. See, e.g. Bridge Fund, 622 F.3d at 1004

1  ("California law treats . . . terms over which a party of lesser
2  bargaining power had no opportunity to negotiate[] as procedurally
3  unconscionable to some degree.") (citing Armendariz, 6 P.3d at
4  690); Pokorny, 601 F.3d at 996 ("An agreement or any portion
5  thereof is procedurally unconscionable if 'the weaker party is
6  presented the clause and told to "take it or leave it" without the
7  opportunity for meaningful negotiation.'" (quoting Szetela v.
8  Discover Bank, 97 Cal.App.4th 1094 (2002).

### 2. Substantive Unconscionability

Substantive unconsciousnability focuses on the one-sidedness of the contract terms. Armendariz, 6 P. 3d at 690. "Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'" Ting, 319 F.3d at 1149 (citing Armendariz, 6 P.3d at 692).

Here, the burdens of the arbitration procedures fall inordinately on the invoiced party. If Unimax believes it has been improperly charged, it must provide written notice of the dispute to Cosco within thirty days, at pain of forfeiting any defense to such charges, regardless of whether the charges are proper. Cosco contends that the "expeditious and efficient" thirty-day limitation period furthers Unimax's "interest in resolving legitimate disputes." (Reply at 12-13.) Cosco's argument ignores the reality that the thirty-day notice period operates as a statute of limitations shorter than that available under California law, and works solely to Cosco's benefit.

Other terms of the Provision also operate solely to Cosco's benefit. While both parties could theoretically initiate an

8

arbitration, the burden is always on the invoiced party to initiate a dispute. (Agreement § H.1.) When an invoiced party believes it has been wrongly charged and seeks to arbitrate, it must submit all of its arguments to the arbitration panel first. The invoiced party must articulate its arguments with a clarity bordering on prescience, for it has no right to discovery and will have no opportunity to rebut the invoicing party's response (notwithstanding the possibility that the arbitration panel "may" initiate a conference call). Finally, even if the invoiced party receives a favorable determination, the arbitration panel lacks the power to enjoin the invoicer's wrongful conduct, leaving the invoicer free to repeat the offense. In the case of an ongoing violation, the invoiced party's only option is to initiate a separate dispute every thirty days, ad infinitum. Under these circumstances, the arbitration procedures lack even a modicum of bilaterality, and the Provision is, therefore, substantively unconscionable.

**IV. Conclusion**

For the reasons stated above, Defendants' Motion to Compel Arbitration is DENIED.

IT IS SO ORDERED.

Dated: November 28, 2011

DEAN D. PREGERSON
United States District Judge

9